**IT IS ORDERED as set forth below:**

**Date: May 13, 2011**

_____
**Robert E. Brizendine**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SCOVILL FASTENERS INC., *et. al.* | ) | Case No. 11-21650 |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**Order (A) Approving Bidding Procedures for the Proposed Sale of Substantially All of Debtors' Assets; (B) Scheduling an Auction and a Hearing to Consider Approval of the Sale of Debtors' Assets; (C) Approving Notices of Respective Dates, Times, and Places for Auction and for Hearing on Approval of Sale of Assets; (D) Approving Certain Break-Up Fee Provisions; and (E) Establishing Procedures Relating to the Assumption and Assignment of Contracts and Leases, including Notice of Cure Costs**

Upon the Motion[2] of the debtors and debtors in possession (collectively, the "**Debtors**" or

"**Sellers**"), requesting entry of an order (the "**Motion**"):   (A) approving bidding procedures (the

"**Bidding Procedures**") for the proposed sale (the "**Sale**") of substantially all of the Debtors'

assets, (B) scheduling an auction (the "**Auction**") and a hearing (the "**Sale Hearing**") to consider

---

[1]        The last four digits of the tax identification number for each of the Debtors follow in parenthesis: (i) Scovill Fasteners, Inc. (9561); (ii) Scovill, Inc. (3634); (iii) PCI Group, Inc. (7672) and Rau Fastener Company, L.L.C. (0883).  Scomex, Inc. does not have a taxpayer identification number.  The mailing address of the Debtors is 1802 Scovill Drive, Clarkesville, GA 30523-6348.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the APA (defined below) or in the Bidding Procedures (defined below).

approval of the Sale and other related relief, (C) approving the proposed notices of the respective dates, times, and places for the Auction and for the Sale Hearing, (D) approving the Break-Up Fee provisions contained in the asset purchase agreement (the "**APA**") dated April 15, 2011 with Global SFI Holdings, LLC (the "**Buyer**") and (E) establishing procedures relating to the assumption and assignment of certain executory contracts and unexpired leases, including notice ("**Cure Notice**") of proposed cure amounts ("**Cure Costs**") (collectively referred to herein as the "**Initial Relief**"); upon consideration of the objection [Docket No. 81] (the "**Committee Objection**") filed by the Official Committee of Unsecured Creditors; and the Court having determined at the May 12, 2011 hearing on the Motion (the "**Hearing**") that, to the extent set forth herein, the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest; due and appropriate notice of the Motion and the relief requested therein was provided by the Debtors; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

FOUND, CONCLUDED AND DECLARED THAT:[3]

A.     This Court has jurisdiction over these cases, this proceeding and over the property of the estates of the Debtors pursuant to 28 U.S.C. §§ 157(a) and 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M) and (0).

B.     Notice of the Hearing, the Motion and proposed entry of this Order is sufficient for all purposes under the Bankruptcy Code, Bankruptcy Rules and Local Rules of this Court, including, without limitation, Bankruptcy Code § 102(1), and no further notice of, or hearing on, the matters addressed in this Order is necessary or required.

C.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the Bidding Procedures.   The Bidding

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

Procedures were negotiated in good faith by the Debtors and the Buyer and are reasonable and appropriate.

D.     The form of notices, parties to be served, and method of service proposed by the Debtors (described in more detail below) are reasonable and appropriate, and are in compliance with the applicable Bankruptcy Rules.

E.     The Buyer has expended, and likely will continue to expend, considerable time, money and energy pursuing its proposed purchase of the Acquired Assets and has engaged in extended arm's length and good faith negotiations.  The APA is the culmination of these efforts. The Debtors, after extensive efforts, have been unable to find a purchaser for the Assets who is willing to enter into a definitive agreement to purchase the Assets on terms as favorable to the Debtors and their estates as the APA.

F.     The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Break-Up Fee to Buyer.

G.     The Break-Up Fee is fair and reasonable, provides a material benefit to the Debtors' estates and creditors, and was negotiated by the Debtors in good faith and at arm's-length.

H.     The Debtors' payment to the Buyer (under the conditions of and as set forth in the APA) of the Break-Up Fee are:  (i) actual and necessary costs and expenses of preserving the Debtors' estates; (ii) of substantial benefit to the Debtors' estates; (iii) reasonable and appropriate, in light of, among other things, (a) the size and nature of the proposed sale under the APA; (b) the substantial efforts that have been and will be expended by the Buyer; and (c) the benefits that the Buyer has provided to the Debtors' estates and creditors and all parties in interest herein, notwithstanding that the proposed sale is subject to higher or better offers; and (iv) necessary to ensure that the Buyer will continue to pursue its proposed acquisition of the Acquired Assets.  In particular, the APA was the culmination of a process undertaken by the Debtors and

their professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Acquired Assets in order to maximize the value of the Debtors' estates.

I.     The Break-Up Fee is an expense that is necessary to maximize the value of the Debtors' estates and the entry of this Order is in the best interests of the Debtors, their estates, creditors, and all other parties in interest.

J.     No other party to date has entered into an asset purchase agreement for the acquisition of the Acquired Assets on terms acceptable to the Debtors: (i) the execution of the APA is a necessary prerequisite to determining whether any party other than the Buyer is willing to enter into a definitive agreement for the acquisition of the Acquired Assets on terms acceptable to the Debtors and their creditor constituency; (ii) the protections afforded to the Buyer by payment of the Break-Up Fee in accordance with the provisions of the APA were material inducements for, and express conditions of, the Buyer's willingness to enter into the APA, and (iii) the Buyer is unwilling to commit to hold open its offer to acquire the Acquired Assets under the terms of the APA unless the provisions set forth in the APA with respect to the allowance and payment of the Break-Up Fee are approved.

K.     The assurance of the payment in cash of the Break-Up Fee:  (i) will promote more competitive bidding by inducing the Buyer's bid, which otherwise would not have been made, without which competitive bidding would be limited, and which may be the highest and best available offer for the Acquired Assets; (ii) has induced the Buyer to research the value of the Acquired Assets, conduct extensive due diligence and propose the transactions contemplated by the APA, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely; and (iii) will provide a benefit to the  Debtors' estates by increasing the likelihood that the price at which the Acquired Assets are sold will reflect their true worth.

L.     The procedures proposed by the Debtors relating to the assumption and assignment of certain executory contracts and unexpired leases, including the form of the Cure Notice are reasonable and appropriate, and are in compliance with applicable Bankruptcy Rules.

M.     The entry of this Order is in the best interests of the Debtors, their estates, creditors and other parties-in-interest; and it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

1.     The Initial Relief requested in the Motion is granted to the extent set forth herein. All objections to the relief requested in the Motion, included without limitation, the Committee Objection, that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled or resolved as set forth herein.

2.     The **Bidding Procedures** attached hereto as **Exhibit 1**, are hereby approved and fully incorporated into this Order, and shall apply with respect to the Debtors' proposed sale of the Assets.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures and this Order.  As set forth in the Bidding Procedures, the **Bid Deadline** is **June 6, 2011 at 4:00 p.m. (Eastern Time)**.  If a Bid (other than the Buyer's) is received by the Bid Deadline and is determined to be a Qualified Bid, the Debtors shall conduct an **Auction** which shall commence at **10:00 a.m. (Eastern Time), on June 8, 2011** and ending no later than 5:00 p.m. (Eastern Time) on June 9, 2011 (the "**Auction Date**") in the offices of Alston & Bird LLP, Atlantic Center Plaza, 15th Floor, 1180 West Peachtree Street, Atlanta, GA 30309.   The Court will not grant any requests for an extension of the Bid Deadline.

3.     Not later than three (3) business days from the entry of this Order the Debtors shall send, by first-class mail postage prepaid, the **Notice of Auction and Hearing,** substantially in the form annexed hereto as **Exhibit 2**, to all parties listed on the creditor matrix.

4.      To the extent not previously provided, not later than three (3) days after entry of this Order, the Debtors shall send, by first-class mail postage prepaid, the **Notice of Proposed Sale, Bidding Procedures, Auction Date and Sale Hearing**, substantially in the form annexed hereto as **Exhibit 3**, to (i) the Master Service List, (ii) the Buyer and all other entities known by the Debtors to have expressed a *bona fide* interest in acquiring all or portions of the Assets, (iii) all taxing authorities in the jurisdictions where the Debtors operate that have a reasonably known interest in the relief requested and which may have claims against the Debtors, (iv) all federal, state and local regulatory authorities known by the Debtors to assert jurisdiction over the Debtors and/or their property and to have an interest in the proposed Sale (including, without limitation, all relevant governmental authorities with authority over labor, employment, pensions and retiree medical benefits, including, without limitation, the Pension Benefit Guaranty Corporation, the United States Department of Labor and the Equal Employment Opportunity Commission), (v) any and all unions representing former employees or retirees of the Debtors or their predecessors, (vii) any retirees or former employees of any of the Debtors that are entitled to any retiree medical or life insurance benefits or other payments from any of the Debtors; (viii) the United States Environmental Protection Agency, (ix) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property, (x) the office of the United States Attorney for the Northern District of Georgia, (xi) all non-debtor parties to a contract or lease that the Debtors reasonably expect a purchaser to have assumed and assigned in connection with any Sale, and (ix) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Acquired Assets.

5.      The Break-Up Fee is hereby approved in all respects.

6.      Subject to the conditions and limitations set forth in the APA, the Debtors shall pay the Break-Up Fee to the Buyer pursuant to the terms and conditions set forth in the APA and without further order of this Court.

7.      Not later than five (5) days from entry of this Order, the Debtors shall serve the **Cure Notice**, substantially similar to the form attached hereto as **Exhibit 4** hereto, upon counterparties to any contract or lease that the Debtors reasonably expect a purchaser to have assumed and assigned in connection with any Sale.

8.      The Debtors will attach to the Cure Notice the calculation of the undisputed Cure Costs that the Debtors believe must be paid to cure all defaults under all such contracts or leases. If no amount is listed on the Cure Notice or is shown as "0", the Debtors believe that there are no Cure Costs. Unless the non-debtor party to a Designated Contract files an objection (the "**Cure Amount Objection**") to its scheduled Cure Costs no later than three (3) business days prior to the Sale Hearing and serves the objection upon: (a) counsel to the Debtors, Alston & Bird LLP, One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424, Attention: W. Hunter Holliday, Esq. and John C. Weitnauer, Esq.; (b) counsel to the lender, King & Spalding, 1180 Peachtree Street, NE, Atlanta, GA 30309, Attention: Sarah Borders, Esq. and Sarah Taub, Esq.; (c) counsel to the Official Committee of Unsecured Creditors, Greenberg Traurig LLP, 3290 Northside Parkway, Suite 400, Atlanta, GA 30327, Attention: David B. Kurzweil, Esq. and John D. Elrod, Esq.; and (d) counsel for the Buyer, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd, Suite 1100, Los Angeles, CA 90067, Attention: Robert M. Saunders, Esq. and David Barton, Esq. and Burr & Forman LLP, 171 17th Street, NW, Atlanta, GA 30363, Attention: Erich N. Durlacher, Esq., then such non-debtor party shall (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts owing with respect to any defaults existing under such Designated Contract and the Debtors shall be entitled to rely solely upon the Cure Costs; and (ii) be forever barred and estopped from asserting or claiming against the Debtors, the Buyer, or such other Successful Bidder or any other assignee of the relevant Designated Contract that any additional amounts are due or defaults exist under such Designated Contract.

9. In the event that a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (i) the basis for the objection with specificity, (ii) the amount the party asserts as the Cure Costs, and (iii) attach appropriate documentation in support of the asserted Cure Costs. In the event that the Debtors and the non-debtor party to the Designated Contract cannot consensually resolve the Cure Amount Objection, the Debtors will segregate any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties.

10. Hearings on any Cure Amount Objections may be held (a) at the Sale Hearing, or (b) on such other date as this Court may designate upon motion by the Debtors, provided that if the subject Designated Contract is assumed and assigned prior to such hearing, the cure amount asserted by the objecting party (or such lower amount as may be fixed by this Court) shall be deposited and held in a segregated account pending further order of this Court or mutual agreement of the parties.

11. The Debtors' decision to assume and assign any contracts or leases is subject to Court approval and consummation of the proposed sale of the Acquired Assets. Absent consummation of the proposed sale of the Assets, no contracts or leases shall be deemed assumed or assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

12. Except to the extent otherwise provided in the APA or the agreement with the Successful Bidder, subject to payment of the cure amount determined by the Court (the "**Cure Payment**"), the assignee of any assumed contract or lease shall not be subject to any liability or other obligation to the counterparty that accrued or first arose before the effective date of the proposed sale of the Assets, and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to Section 365(k) of the Bankruptcy Code.

13.    Objections, if any, to the remaining relief requested in the Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the Northern District of Georgia, on or before 4:00 p.m. (prevailing Eastern time) on June 3, 2011 and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon:  (i) counsel to the Debtors, Alston & Bird LLP, One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA  30309-3424, Attention: W. Hunter Holliday, Esq. and John C. Weitnauer, Esq.; (ii) counsel to the lender, King & Spalding, 1180 Peachtree Street, NE, Atlanta, GA 30309, Attention: Sarah Borders, Esq. and Sarah Taub, Esq.; (iii) counsel to the Official Committee of Unsecured Creditors, Greenberg Traurig LLP, 3290 Northside Parkway, Suite 400, Atlanta, GA 30327, Attention David B. Kurzweil, Esq. and John D. Elrod, Esq.; and (iv) counsel for the Buyer, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd, Suite 1100, Los Angeles, CA 90067, Attention: Robert M. Saunders, Esq. and David Barton, Esq. and Burr & Forman LLP, 171 17th Street, NW, Atlanta, GA 30363, Attention:  Erich N. Durlacher, Esq.

14.    The Sale Hearing shall be held before this Court on June 10, 2011 at 9 a.m. (prevailing Eastern time).  The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

15.    The notices to be issued in connection with the proposed sale of the Acquired Assets, substantially in the form of the notices annexed hereto as Exhibits 2, 3 and 4 are approved in all respects.

16.     Upon the consummation or closing of an Alternative Transaction, the Debtors shall pay to the Buyer in immediately available funds an amount equal to $620,000 (the "**Break-up Fee**"); provided, however, the Break-up Fee shall not be due and payable if the Buyer has committed a Purchaser Material Breach prior to any termination of the APA.  The Break-up

Fee shall be treated in the Debtors' bankruptcy cases as an administrative expense claim under Section 503(b)(1) and Section 507(a)(1) of the Bankruptcy Code and shall be paid to Buyer (or such person or persons as the Buyer may designate) as of the consummation of an Alternative Transaction.

17.    This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

18.    This Order shall not be stayed for fourteen (14) days after the entry thereof as provided by Bankruptcy Rules 6004(h) and 6006(d), and shall be effective and enforceable immediately upon its entry on this Court's docket.

19.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20.    The Debtors or their agent are directed to serve a copy of this Order on the applicable notice parties.

21.    This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bidding Procedures.

***   **END OF ORDER**   ***

**Prepared and presented by:**

ALSTON & BIRD LLP

/s/   John C. Weitnauer
John C. Weitnauer (Bar No. 746550)
Heather Byrd Asher (Bar No. 139022)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Proposed Attorneys for Debtors*

# EXHIBIT 1

# BIDDING PROCEDURES

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SCOVILL FASTENERS INC., *et. al.* | ) | Case No. 11-21650 |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**BIDDING PROCEDURES**

The above-captioned debtors (collectively the "**Debtors**") have filed chapter 11 cases pending in the Bankruptcy Court,[2] which cases are jointly administered under Case No. 11-21650. By motion dated April 20, 2011 (the "**Motion**"), the Debtors sought, among other things, approval of the process and procedures set forth below (the "**Bidding Procedures**") through which they will determine the highest, best or otherwise financially superior offer for substantially all of the Debtors' assets (the "**Assets**").  On May 13, 2011, the Bankruptcy Court entered its order (the "**Bidding Procedures Order**") which, among other things, approved these Bidding Procedures.

On June 10, 2011, the Bankruptcy Court shall conduct the Sale Hearing at which the Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Assets (the "**Proposed Sale of the Assets**") to the Buyer (defined below) or to a Qualified Bidder (defined below) that the Debtors, in their reasonable discretion, determine to have made the highest and best offer for the Assets (the "**Successful Bid**").

*Agreement*

On April 15, 2011, the Debtors entered into an asset purchase agreement (the "**APA**") with Global SFI Holdings, LLC (the "**Buyer**"), pursuant to which the Buyer proposes to acquire the Assets.  Pursuant to the APA, the Buyer will pay the Debtors (i) $17,000,000, plus (ii) the Purchaser's Total Cure Costs, if any, and, plus or minus, as the case may be, (iii) the difference between $9,675,000 and the Working Capital as of the Effective Time (the "**Change in Working Capital**"); provided however, if the Change in Working Capital, either positive or negative, is greater than $2,000,000 (the "**Maximum Amount**"), then the Change in Working Capital shall be deemed equal to the Maximum Amount; and, in addition, Buyer shall assume the Assumed Liabilities, in consideration for the sale of substantially all of the assets of the Debtors' estates as

---

[1]   The last four digits of the tax identification number for each of the Debtors follow in parenthesis: (i) Scovill Fasteners, Inc. (9561); (ii) Scovill, Inc. (3634); (iii) PCI Group, Inc. (7672) and Rau Fastener Company, L.L.C. (0883).  Scomex, Inc. does not have a taxpayer identification number.  The mailing address of the Debtors is 1802 Scovill Drive, Clarkesville, GA 30523-6348.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the APA (defined below).

set forth in the APA.  The transaction contemplated by the APA is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365.

*Assets for Sale*

The Debtors are offering for sale all or substantially all of the assets of the Debtors.  The assets for sale do not include the Excluded Assets, as more fully set forth in the APA.

*Designation as a Potential Bidder*

A person interested in making a bid to purchase the Assets must first deliver to the Debtors and their counsel written evidence that demonstrates that such person has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction *provided however*, that this requirement does not apply to a person who provided such information to the Debtors prior to the Petition Date.

If the Debtors conclude, following consultation with General Electric Capital Corporation, Agent for the Debtors' prepetition secured lenders and postpetition lenders (the "**Lender**") and the Official Committee of the Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "**Committee**"), that a person has the necessary financial ability to close the contemplated transaction, the Debtors will notify such person that it has been designated as a "**Potential Bidder**."  Notwithstanding the designation of a person as a Potential Bidder, each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction.

*Only Potential Bidders Given Access to Due Diligence Materials*

Only Potential Bidders that provide an executed confidentiality agreement in substantially the form attached hereto as Exhibit A  are eligible to be given access to the Debtors' management, due diligence materials or additional non-public information, *provided however*, that this requirement does not apply to a person who executed a confidentiality agreement with the Debtors prior to the Petition Date that is still in effect.  The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders in connection with the sale of the Assets.

If the Debtors furnish any written materials related to the Debtors to a Potential Bidder that was not previously made available to the Buyer, then the Debtors shall place such materials in the Debtors' electronic data room and such information shall be made available to the Buyer and all other Potential Bidders (which shall be provided electronic or written notice thereof).

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder that submits a Qualified Bid by the Bid Deadline.  The Buyer is a Qualified Bidder.

*Submission of Written Bids and Designation of Qualified Bids*

Each Potential Bidder that desires to make an offer, solicitation or proposal to purchase the Assets (a "**Bid**") shall deliver written copies of such Bid to (a) counsel to the Debtors, Alston & Bird, One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424, Attention: W. Hunter Holliday, Esq. and John C. Weitnauer, Esq.; (b) counsel to the Lender, King & Spalding 1180 Peachtree Street, Atlanta, GA 30309, Attention: Sarah R. Borders, Esq. and Sarah L. Taub, Esq.; and (c) counsel to the Committee, Greenberg Traurig LLP, 3290 Northside Parkway, Suite 400, Atlanta, GA 30327, Attention: David B. Kurzweil, Esq. and John B. Elrod, Esq. no later than **June 6, 2011, at 4:00 p.m. (Eastern time)** (the "**Bid Deadline**").   The Bid Deadline will not be extended.

Only if a Bid satisfies each of the following conditions can it be designated a Qualified Bid:

(a)     Good Faith Deposit:  The Bid must be accompanied by a deposit (the "**Good Faith Deposit**") in the form of a certified check or cash payable to the order of the Debtors in an amount equal to $1,000,000.

(b)     Minimum Overbid:  The cash consideration proposed by the Bid must include cash or other consideration acceptable to the Debtors and Lender, in the amount of the APA, the Break-Up Fee and $250,000 ("**Initial Minimum Overbid Increment**").In addition, the Bid must provide for assumption of the Assumed Liabilities.

(c)     Irrevocable:  A bid must be irrevocable until two (2) business days after the Assets have been sold pursuant to the Closing of the sale or sales approved by the Bankruptcy Court (the "**Termination Date**") and must provide that if such bid is not the successful bid at the Auction, that such bid shall remain open for acceptance as a "back up" bid ("**Back-up Bid**") and remain open for acceptance by the Debtors through the Transaction Deadline at the last price and on the terms offered by the Bidder at the Auction, *provided however*, if a Qualified Bidder states in its Bid that it is not willing for any Bid made by it to be selected as a Back-Up Bid , such Qualified Bidder's bid must be irrevocable until the Auction. A Potential Bidder's refusal to serve as a Back-Up Bidder (as that term is defined below) will not disqualify such bidder from becoming a Qualified Bidder nor will such refusal have an impact on the determination of whether such bidder's Bid is the highest and best offer.

(d)     The Same or Better Terms: The Bid must be on terms that, in the Debtors' business judgment, upon consultation with the Lender and the Committee, are substantially the same or better than the terms of the APA.  A Bid must include an asset purchase agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "**Contemplated Transaction Documents**").  A Bid shall include a copy of the APA marked to show all changes requested by the Bidder (including those related to Purchase Price).  The Contemplated Transaction Documents must include a commitment to close by the Transaction Deadline.  A Bid must propose a contemplated transaction involving all or substantially all of the Assets.

3

(e) <u>Contingencies</u>: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall determined by the Debtors in their reasonable discretion, upon consultation with the Lender and the Committee, be more burdensome than those set forth in the APA.

(f) <u>No Fees payable to Qualified Bidder</u>: A Bid may not request or entitle the Qualified Bidder to any Break-Up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures.

(g) <u>Ability to Consummate</u>:  The Debtors believe, in their reasonable discretion, upon consultation with the Lender and the Committee, that such Bid would be consummated if selected as the Successful Bid.

Notwithstanding any of the foregoing requirements, the Buyer's Bid shall constitute a Qualified Bid.

After consideration of any Bids received, the Debtors, upon consultation with the Committee and Lender, shall determine as soon as is practicable whether any Bid is a Qualified Bid, and if so, shall notify the Potential Bidder that the Bid is a Qualified Bid and that Potential Bidder is a Qualified Bidder.  In the event that any Bid is determined not to be a Qualified Bid, the Potential Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after that determination.

If no Bids are received by the Bid Deadline, or none of the Bids submitted before the Bid Deadline is determined to be a Qualified Bid, then the Buyer will be deemed the Successful Bidder, the APA will be the Successful Bid and the Debtors will seek approval to and authority to consummate the Proposed Sale of the Assets contemplated under the APA.  If, however, a Bid (other than the Buyer's) is received by the Bid Deadline and is determined to be a Qualified Bid, the Debtors shall conduct an auction (the "**Auction**") for the Assets as provided below.  The Debtors shall provide the Buyer and all Qualified Bidders with copies of all Qualified Bids no later than noon (Eastern time) on June 7, 2011.

**Auction**

*Date, Time and Location of Auction*

**The Auction shall commence at 10:00 AM, prevailing Eastern Time, on June 8, 2011 (the "Auction Date") in the offices of Alston & Bird LLP, 15th Floor, 1180 West Peachtree Street, Atlanta, GA 30309**.

*Persons Permitted to Attend or Participate; Consent to Jurisdiction of the Bankruptcy Court*

Only Qualified Bidders will be eligible to participate at the Auction.  Only the authorized representatives of Qualified Bidders, the Committee, the Lender and the Debtors shall be permitted to attend.  All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any

disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

*The Debtors Shall Conduct the Auction*

The Debtors and their professionals shall direct and preside over the Auction.

*Announcement of the Baseline Bid*

At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid, as determined in the Debtors' reasonable discretion (upon consultation with the Lender and the Committee) (the "**Baseline Bid**").  The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors, after consultation with the Lender and the Committee, reasonably deem relevant to the value of the Qualified Bid to the estates, which may include: (A) the amount and nature of the consideration; (B) the proposed assumption of  liabilities, if any; (C) the ability of the Qualified Bidder to close the proposed transaction; (D) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction on any actual or potential litigation; (G) the net economic effect of any changes from the APA, if any, contemplated by the Contemplated Transaction Documents, (H) the economic effect on the Debtors' estates of any claim waivers included as part of the consideration; and (I) the net after-tax consideration to be received by the Debtors' estates.

*Open Outcry Auction*

After the Baseline Bid has been announced, the auction will proceed by open outcry, as follows: All Bids made thereafter must be Overbids (as defined below), and shall be made and received on an open basis, all other Qualified Bidders, the Lender and the Committee shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.  The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

Notwithstanding the foregoing, the Debtors reserve the right, in their reasonable business judgment after consultation with the Lender and the Committee, to temporarily suspend the making of Overbids in order to allow individual Qualified Bidders to consider how they wish to proceed; to allow discussions between the Debtors, Lenders, the Committee and one or more individual Qualified Bidders; or to give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, after consultation with the Lender and the Committee, in their reasonable business judgment may require, that the Qualified Bidder (other than the Buyer) has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.  Notwithstanding the foregoing, the length and number of such suspensions shall be reasonably limited so that the Auction can be completed in a timely fashion; and in any event, if the Auction is continued to the day after the Auction Date, no suspensions shall be granted that would prevent the Auction from concluding by 5:00 PM Atlanta time on June 9, 2011.

5

*Terms of Overbids*

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid.  To submit an Overbid a Qualified Bidder must comply with the following conditions:

        (i)      Minimum Overbid Increment

Any Overbid after the Baseline Bid shall be made in increments of at least $100,000 of cash or other equivalent value acceptable to the Debtors in its reasonable discretion.  If the Buyer elects to submit an Overbid, the Buyer shall be entitled to a credit in connection with any such Overbid in an amount equal to $620,000, the amount of the Break-Up Fee.

        (ii)      Remaining Terms are the Same or Better as Qualified Bid

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline and the Initial Minimum Overbid Increment shall not apply.  Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher Qualified Bid as an Overbid and (ii) the Overbid of another Qualified Bidder is selected as the Back-Up Bid.

*Announcing Overbids*

The Debtors shall announce during the Auction the material terms of each Overbid.  After each Overbid, the Debtors shall indicate which Bid is, in the Debtors' reasonable business judgment, after consultation with the Lender and the Committee, the highest and best Bid, the basis for calculating the consideration offered in each such Overbid, and shall thereafter provide the Buyer and each Qualified Bidder an opportunity to make subsequent Overbids.

*No Inconsistent Rules*

The Debtors may not adopt rules for the Auction at or prior to the Auction that are inconsistent with any of the provision of the Bidding Procedures Order or these Bid Procedures, absent the written consent of the Buyer,Lender and the Committee or upon Bankruptcy Court order.

*Closing the Auction*

Upon conclusion of the bidding, the Auction shall be closed.  The Debtors will announce which Overbid  has been determined, after consultation with the Lender and the Committee, to be the Successful Bid.  The entity submitting the Successful Bid shall be designated the "Successful Bidder." If the Buyer's final bid is deemed to be highest and best at the conclusion of the Auction, the Buyer will be the Successful Bidder, and such bid, the Successful Bid. In their reasonable discretion, the Debtors may designate the next highest and best offer after the Successful Bid as the "Back-Up Bid" and the bidder making such bid, the "Back-Up Bidder".

**Sale Hearing**

The Sale Hearing shall be conducted by the Bankruptcy Court on June 10, 2011 at 9 a.m. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid.  The Debtors will be deemed to have accepted a

Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing upon the entry of the Approval Order.  Following the entry of the Approval Order, if the Successful Bidder fails to consummate the sale within the time required by the Contemplated Transaction Documents, the Debtors shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Back-Up Bid without further order of the Bankruptcy Court.

### Return of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing.  The Good Faith Deposit of the Back-Up Bidder, if any, shall be held in an interest-bearing escrow account until the Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the Back-Up Bidder, or, in the event the transactions contemplated by the Successful Bid are not consummated, shall be applied to the purchase price of the Back-Up Bid upon the closing of that transaction.  Good Faith Deposits of Qualified Bidders other than the deposit of the Back-Up Bidder shall be returned to the respective bidders promptly following the entry of the Approval Order.  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

### Modifications

The Bidding Procedures may not be modified except with the express written consent of the Debtors and the Buyer after consultation with the Committee and Lender or upon Bankruptcy Court order.

### Right to Reject Bids

The Debtors, upon consultation with the Lenders and the Committee, may (a) determine, which Qualified Bid, if any, is the highest, best or otherwise financially superior offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors.

**Exhibit A**

**NONDISCLOSURE AGREEMENT**

### Exhibit A to Bidding Procedures - NONDISCLOSURE AGREEMENT

**THIS NONDISCLOSURE AGREEMENT** (the "**Agreement**") is entered into as of the date set forth above the signatures below as the effective date (the "**Effective Date**"), between **Scovill Fasteners, Inc.** (the "**Company**"), on the one hand, and the party designated on the signature page hereof as the Discussion Party (the "**Discussion Party**"), on the other hand.

### Background Statement

The Discussion Party is interested in receiving certain Confidential Information (as defined below) from the Company for the sole purpose of evaluating, negotiating and/or carrying out the performance of one or more possible business transactions with the Company (any such business transaction is referred to as a "**Transaction**").  The parties believe it is in their mutual interest to ensure that all such Confidential Information will be safeguarded and carefully protected by the Discussion Party. In consideration of the foregoing, and other valuable consideration, the parties, intending to be legally bound, agree as follows:

1.      **Confidential Information.**  For purposes of this Agreement, "**Confidential Information**" shall mean the following:

(i)      All  records, files, analyses, documents, technical or financial information, business plans, marketing plans, product information, employee and customer information, any financial statements and analyses, budgets, tax returns, benefits and compensation plans, customer list(s) and contact names, designs, drawings, analysis, research, "know how" and the like, including, without limitation, any confidential information memorandum or similar document(s) provided to Discussion Party by or on behalf of the Company; and

(ii)     Other valuable information of Company designated as confidential expressly or by the circumstances in which such information is provided, including the terms of this Agreement and the fact that the Company, one or more third parties and/or the Discussion Party are discussing or have discussed a possible business Transaction.

"Confidential Information" does not include any of the following:  (a) information already known (other than as a result of disclosure by any person on behalf of the Company) or independently developed by the Discussion Party without any reference to any information provided by the Company; (b) information in the public domain through no wrongful act of the Discussion Party; or (c) information received by the Discussion Party from a third party who was under no legal obligation not to disclose it.

2.      **Covenant Not To Disclose Or Use.**

(i)      The Discussion Party hereby acknowledges that it will be exposed to Confidential Information of Company, including, without limitation, specific information regarding the Company's financial condition, products, services, personnel, plans and/or other business matters.

(ii)     The Discussion Party hereby agrees that it shall not (a) use, commercialize or disclose any Confidential Information, (b) make any inquiry about the Company's business to any customer, employee, supplier, creditor or competitor of the Company, or (c) disclose the content or existence of any of the discussions between the parties hereto, to any person or entity, except in connection with the Discussion Party's evaluation of a Transaction to employees or agents of the Discussion Party having a need to know (and who are themselves bound by similar nondisclosure restrictions), to potential sources of financing who agree in writing to be bound by this Agreement, and to such other persons as the Company may approve in writing, provided that all such persons shall have

first executed a confidentiality agreement in a form acceptable to Company.  In addition to its other obligations concerning confidentiality contained in this Agreement, Discussion Party agrees at all times to use commercially reasonable efforts in the handling of any Confidential Information of Company and, in any event, to use at least the same degree of care with any Confidential Information of Company that Discussion Party uses with its own Confidential Information.

(iii)   The obligations of confidentiality set forth in this Section 2   shall be effective as of Effective Date and shall continue in full force and effect until such time as either party provides written notice to the other of termination of the applicable Transaction (if one is entered into) or of the discussions concerning a Transaction (if a Transaction is not entered into) and for a period of thirty-six (36) months after any such termination notice; provided, however, that as to any item of Confidential Information that constitutes a trade secret under applicable law, the obligations of confidentiality contained herein shall continue for so long as allowed under applicable law.

(iv)   Each of the foregoing covenants (and that in Section 5 below) is a separate and independent covenant, and is expressly agreed to be severable from the other covenants in this Section 2.  The invalidity of any of the independent covenants in this Section 2 (or Section 5) shall in no way render invalid or unenforceable any other part or provision of this Section 2 (or Section 5).

3.   **Limits on Representations, Warranties and Reliance.**

(i)   The Discussion Party understands and acknowledges that neither the Company nor any of its representatives (including without limitation, Carl Marks Advisory Group ("**CMAG**")), make any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information.  The Discussion Party agrees that neither the Company nor any of its representatives (including, without limitation, CMAG) shall have any liability relating to or resulting from the use of the Confidential Information.  Only those representations or warranties which are made in a final definitive agreement regarding a Transaction, when, as and if executed, and subject to such limitations and restrictions as may be specified therein, will have any legal effect.

(ii)   The Discussion Party agrees that unless and until a final definitive agreement regarding a Transaction between the Company and the Discussion Party has been executed and delivered, that the Company will not be under any legal obligation of any kind whatsoever with respect to such a Transaction by virtue of this Agreement, except for those matters specifically agreed to in this Agreement.  The Discussion Party further acknowledges and agrees that the Company reserves the right to reject any and all proposals made by the Discussion Party with regard to a possible Transaction and to terminate discussions and negotiations with the Discussion Party at any time.

4.   **Return of Confidential Information.**   Upon the earlier to occur of a request therefor by Company or the completion of the Discussion Party's evaluation of an Transaction between them, the Discussion Party will return all Confidential Information and copies thereof to an officer of Company, or destroy the Confidential Information and certify the destruction to the Company.

5.   **Non-Solicitation of Employees.**   For a period of twelve (12) months from the termination of discussions with the Company concerning a Transaction, the Discussion Party will not solicit for employment any of the Company's employees, other than through general advertising not targeted at the employees of the Company..

2

6.      **Remedies for Breach.**    The Discussion Party acknowledges that the violations of the restrictions and other obligations imposed under this Agreement may cause irreparable harm to the Company and that remedies at law would be inadequate to redress any actual or threatened violation of this Agreement.  Accordingly, the Discussion Party agrees that, in addition to other relief, the foregoing restrictions may be enforced by temporary and permanent injunctive relief, without the necessity of the posting of any bond.  Any award of relief to the Company shall include its costs and expenses of enforcement (including reasonable attorneys' fees).  Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach or threatened breach, including recovery of any applicable damages from the Discussion Party.

7.      **Choice of Law; Forum.**    This Agreement is governed by and shall be construed in accordance with the substantive laws of the State of New York, U.S.A. without regard to principles of conflicts of law, and any action arising out of or pertaining to this Agreement may (but need not) be initiated and maintained in a court of competent jurisdiction in such state.

8.      **General Provisions.**    This Agreement, together with any separate written agreements concerning such subject matter, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all other communications, whether written or oral, on this subject matter.  This Agreement is may be modified or amended only by a writing signed by an authorized representative of the party against whom enforcement is sought.  This Agreement shall be binding upon each of the parties hereto and their respective successors and assigns (as well as those entities that are affiliated with the parties hereto by common control).    Neither this Agreement nor any rights or obligations hereunder may be transferred or assigned without the other party's prior written consent and any attempt to the contrary shall be void.  Any provision hereof found by a court of competent jurisdiction to be illegal or unenforceable shall be automatically conformed to the minimum requirements of law and all other provisions shall remain in full force and effect.  Waiver of any provision hereof in one instance shall not preclude enforcement thereof on future occasions.  Unless otherwise agreed in writing, this Agreement shall govern Confidential Information disclosed by Company to the Discussion Party prior to, as well as after, the effective date hereof.  This Agreement may be executed in counterpart originals and by facsimile or other electronic signatures (including by exchange of PDF signature pages).

**[Signatures Appear in Following Page]**

3

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Effective Date: _____, 2011

Company: Scovill Fasteners, Inc.

By:_____

Name: ___Stewart Q Little_____

Title: ___CEO & President_____

Address for Notices:

1802 Scovill Drive_____

Clarkesville, Georgia 30523___

_____

Discussion Party:

Entity Name:
[If other than an individual]

Signature:_____

Name (Printed):_____

Title: _____

Address for Notices:

_____

_____

_____

**EXHIBIT 2**

**NOTICE OF AUCTION AND HEARING**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SCOVILL FASTENERS INC., *et. al.* | ) | Case No. 11-21650 |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**NOTICE OF AUCTION AND HEARING**

PLEASE TAKE NOTICE that, on April 20, 2011, the debtors and debtors in possession in these bankruptcy cases (the "**Debtors**") filed a motion (the "**Motion**")[2] for Orders: (A) Approving Bidding Procedures for the Proposed Sale of Substantially all of the Debtors' Assets; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale of Debtors' Assets; (C) Approving Notices of Respective Dates, Times, and Places for Auction and for Hearing on Approval of Sale of Assets; (D) Approving Certain Break-Up Fee Provisions; (E) Establishing Procedures Relating to the Assumption and Assignment of Contracts and Leases, including Notice of Cure Amounts; (F) Authorizing and Approving the Asset Purchase Agreement with the Stalking Horse Bidder or Such Other Purchaser Providing a Higher or Otherwise Better Offer; (G) Authorizing and Approving the Assumption and Assignment of Contract and Leases and Related Cure Amounts; (H) Authorizing the Sale of Debtors' Assets,

---

[1]    The last four digits of the tax identification number for each of the Debtors follow in parenthesis: (i) Scovill Fasteners, Inc. (9561); (ii) Scovill, Inc. (3634); (iii) PCI Group, Inc. (7672) and Rau Fastener Company, L.L.C. (0883). Scomex, Inc. does not have a taxpayer identification number. The mailing address of the Debtors is 1802 Scovill Drive, Clarkesville, GA 30523-6348.

[2]    Terms not defined herein shall have the meaning given to them in the Motion.

Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; and (I) Authorizing Debtors to Consummate All Such Transactions.   The relief requested in items (A) through (E) is collectively referred to herein as the "**Initial Relief**".

PLEASE TAKE FURTHER NOTICE that, on May 13, 2011, the United States Bankruptcy Court for the Northern District of Georgia (the "**Court**") entered an Order (the "**Bidding Procedures Order**") granting the Initial Relief, including approving the bidding procedures attached thereto as **Exhibit 1** (the "**Bidding Procedures**") in connection with the proposed sale by the Debtors of substantially all their assets (the "**Assets**") to Global SFI Holdings, LLC (the "**Buyer**") or another party submitting a higher or otherwise better offer therefor.

PLEASE TAKE FURTHER NOTICE that if you wish to obtain a copy of the Motion and/or Bidding Procedures Order you may obtain a copy by making an electronic or telephonic request upon the Debtors' counsel, Kit Weitnauer (kit.weitnauer@alston.com) or Heather Byrd Asher (heather.asher@alston.com) at 404-881-7000 or by accessing the Debtors' website at www.bmcgroup.com/scovillfasteners.

PLEASE TAKE FURTHER NOTICE that, as outlined in greater detail in and pursuant to the Bidding Procedures, competing bids for the acquisition of the Assets must be in writing, comply with the terms and conditions set forth in the Bidding Procedures, and must be delivered to (a) counsel to the Debtors, Alston & Bird LLP, One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424, Attention: W. Hunter Holliday, Esq. and John C. Weitnauer, Esq.; (b) counsel to the Lenders, King & Spalding 1180 Peachtree Street, Atlanta, GA 30309, Attention: Sarah R. Borders, Esq. and Sarah L. Taub, Esq.; and (c) counsel to Official

Committee of Unsecured Creditors (the "Committee"), the Official Committee of Unsecured Creditors, Greenberg Traurig LLP, 3290 Northside Parkway, Suite 400, Atlanta, GA 30327, Attention David B. Kurzweil, Esq. and John D. Elrod, Esq., no later than **June 6, 2011, at 4:00 p.m. (Eastern Time)** (the "**Bid Deadline**").

PLEASE TAKE FURTHER NOTICE that, as outlined in greater detail in and pursuant to the Bidding Procedures, if one or more Qualified Bids are received by the Bid Deadline, the Auction shall commence at **10:00 a.m. (Eastern Time) on June 8, 2011 (the "Auction Date")** **in the offices of Alston & Bird LLP, Atlantic Center Plaza, 15th Floor, 1180 West Peachtree Street, Atlanta, GA 30309.**  If, however, the only Bid received by the Bidding Deadline is the agreement with the Buyer, then the Auction will not be held, the Buyer will be deemed the successful bidder for the Assets, and the Debtors will seek approval thereof at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that a hearing to consider the remaining relief requested in the Motion and the results of the Auction (the "**Sale Hearing**") will be held before the Honorable Robert E. Brizendine, United States Bankruptcy Court Judge, at the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Courtroom 1202, 75 Spring Street, Atlanta, Georgia 30303 on **June 10, 2011** at **9:00 a.m.** (the "**Sale Hearing Date**").

**PLEASE TAKE FURTHER NOTICE that, as outlined in greater detail in and pursuant to the Bidding Procedures Order, any objections to any remaining relief requested in the Motion, must be in writing, stating with particularity the grounds for such objection or other statements of positions, and filed and served so as to be actually received by  (a) counsel to the Debtors, Alston & Bird LLP, One Atlantic Center, 1201 West**

Peachtree Street, Atlanta, GA 30309-3424, Attention: W. Hunter Holliday, Esq. and John C. Weitnauer, Esq.; (b) counsel to the Lender, King & Spalding, 1180 Peachtree Street, Atlanta, GA 30309, Attention: Sarah R. Borders, Esq. and Sarah L. Taub, Esq.; (c) counsel for the Buyer, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd, Suite 1100, Los Angeles, CA 90067, Attention: Robert M. Saunders, Esq. and David Barton, Esq. and Burr & Forman LLP, 171 17th Street, NW, Atlanta, GA 30363, Attention: Erich N. Durlacher, Esq., and (d) counsel to the Committee, Greenberg Traurig LLP, 3290 Northside Parkway, Suite 400, Atlanta, GA 30327, Attention: David B. Kurzweil, Esq. and John D. Elrod, Esq., no later than June 3, 2011, at 4:00 p.m. (Eastern time).

PLEASE TAKE FURTHER NOTICE that all requests for information concerning the Assets and, in particular, any requests for a confidentiality agreement, should be in writing and directed to John Rakowski, Carl Marks Advisory Group ("**CMAG**"), 900 Third Avenue, 33rd Floor, New York, NY 10022 or via e-mail at jraowski@carlmarks.com.

PLEASE TAKE FURTHER NOTICE that all parties who timely execute and return a confidentiality agreement to CMAG and who demonstrate sufficient financial wherewithal, will be provided certain due diligence materials.

Dated: May 13, 2011

ALSTON & BIRD LLP

/s/ John C. Weitnauer
John C. Weitnauer (GA. Bar No. 746550)
kit.weitnauer@alston.com
Heather Byrd Asher (GA. Bar No. 139022)
heather.asher@alston.com
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Proposed Attorneys for Debtor*

# EXHIBIT 3

# NOTICE OF PROPOSED SALE, BIDDING PROCEDURES, AUCTION DATE AND SALE HEARING

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SCOVILL FASTENERS INC., *et. al.* | ) | Case No. 11-21650 |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**NOTICE OF PROPOSED SALE, BIDDING PROCEDURES,**
**AUCTION DATE AND SALE HEARING**

PLEASE TAKE NOTICE that, on April 20, 2011, the debtors and debtors in possession in these bankruptcy cases (the "**Debtors**") filed a motion (the "**Motion**") for Orders: (A) Approving Bidding Procedures for the Proposed Sale of Substantially all of the Debtors' Assets; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale of Debtors' Assets; (C) Approving Notices of Respective Dates, Times, and Places for Auction and for Hearing on Approval of Sale of Assets; (D) Approving Certain Break-Up Fee Provisions; (E) Establishing Procedures Relating to the Assumption and Assignment of Contracts and Leases, including Notice of Cure Amounts; (F) Authorizing and Approving the Asset Purchase Agreement with the Stalking Horse Bidder or Such Other Purchaser Providing a Higher or Otherwise Better Offer; (G) Authorizing and Approving the Assumption and Assignment of Contract and Leases and Related Cure Amounts; (H) Authorizing the Sale of Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; and (I) Authorizing

---

[1] The last four digits of the tax identification number for each of the Debtors follow in parenthesis: (i) Scovill Fasteners, Inc. (9561); (ii) Scovill, Inc. (3634); (iii) PCI Group, Inc. (7672) and Rau Fastener Company, L.L.C. (0883). Scomex, Inc. does not have a taxpayer identification number. The mailing address of the Debtors is 1802 Scovill Drive, Clarkesville, GA 30523-6348.

Debtors to Consummate All Such Transactions. The relief requested in items (A) through (E) is collectively referred to herein as the "**Initial Relief**".

PLEASE TAKE FURTHER NOTICE that through the Motion, the Debtors seek, among other things, an order authorizing the Debtors to sell substantially all of their assets (the "**Assets**") to Global SFI Holdings, LLC (the "**Buyer**"), pursuant to that certain Asset Purchase Agreement (the "**APA**") free and clear of all claims, liens, interests and other Encumbrances (as such term is defined in the APA), including but not limited to the Debtors' obligations to former employees and retirees for pensions, medical benefits, life insurance benefits and all other benefits and obligations (other than Assumed Liabilities, as such term is defined in the APA), all as described in more detail in the APA and the attachments thereto.

PLEASE TAKE FURTHER NOTICE that, on May 13 2011, the United States Bankruptcy Court for the Northern District of Georgia (the "**Court**") entered an Order (the "**Bidding Procedures Order**") approving the Initial Relief, including the bidding procedures attached thereto as **Exhibit 1** (the "**Bidding Procedures**").  A copy of the Bidding Procedures Order is attached hereto.

PLEASE TAKE FURTHER NOTICE that a hearing on the results of the Auction and approval of the sale of the Assets to the Buyer or other successful bidder will be held before the Honorable Robert E. Brizendine, United States Bankruptcy Court Judge, at the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Courtroom 1202, 75 Spring Street, Atlanta, Georgia 30303 on **June 10, 2011** at **9:00 a.m.**

**PLEASE TAKE FURTHER NOTICE that any objections to any remaining relief requested in the Motion, must be in writing, stating with particularity the grounds for such**

- 2 -

objection or other statements of positions, and filed and served so as to be actually received by: (a) counsel to the Debtors, Alston & Bird LLP, One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424, Attention: W. Hunter Holliday, Esq. and John C. Weitnauer, Esq.; (b) counsel to the lender, King & Spalding, 1180 Peachtree Street, Atlanta, GA 30309, Attention: Sarah R. Borders, Esq. and Sarah L. Taub, Esq.; (c) counsel for the buyer, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd, Suite 1100, Los Angeles, CA 90067, Attention: Robert M. Saunders, Esq. and David Barton, Esq. and Burr & Forman LLP, 171 17th Street, NW, Atlanta, GA 30363, Attention: Erich N. Durlacher, Esq.; and (d) counsel to the Official Committee of Unsecured Creditors, Greenberg Traurig LLP, 3290 Northside Parkway, Suite 400, Atlanta, GA 30327, Attention: David B. Kurzweil, Esq. and John D. Elrod, Esq. June 3, 2011, at 4:00 p.m. (Eastern time).

PLEASE TAKE FURTHER NOTICE that a copy of the Motion, with the attached APA and other exhibits, may be obtained by making an electronic or telephonic request upon the Debtors' counsel, Kit Weitnauer (kit.weitnauer@alston.com) or Heather Byrd Asher (heather.asher@alston.com) at 404-881-7000 or by accessing the Debtors' website at www.bmcgroup.com/scovillfasteners.

Dated: May 13, 2011

ALSTON & BIRD LLP

/s/ John C. Weitnauer
John C. Weitnauer (GA. Bar No. 746550)
kit.weitnauer@alston.com
Heather Byrd Asher (GA. Bar No. 139022)
heather.asher@alston.com
1201 West Peachtree Street
Atlanta, GA 30309

Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Proposed Attorneys for Debtors*

# EXHIBIT 4

# CURE NOTICE

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SCOVILL FASTENERS INC., *et. al.* | ) | Case No. 11-21650 |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**NOTICE OF CURE AMOUNT FOR COUNTERPARTIES TO**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**THAT MAY BE ASSUMED AND ASSIGNED**

PLEASE TAKE NOTICE that, on April 20, 2011, the debtors and debtors in possession

in these bankruptcy cases (the "**Debtors**") filed a motion (the "**Motion**")[2] for Orders:

(A) Approving Bidding Procedures for the Proposed Sale of Substantially all of the Debtors'

Assets; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale of Debtors'

Assets; (C) Approving Notices of Respective Dates, Times, and Places for Auction and for

Hearing on Approval of Sale of Assets; (D) Approving Certain Break-Up Fee Provisions; (E)

Establishing Procedures Relating to the Assumption and Assignment of Contracts and Leases,

including Notice of Cure Amounts; (F) Authorizing and Approving the Asset Purchase

Agreement with the Stalking Horse Bidder or Such Other Purchaser Providing a Higher or

Otherwise Better Offer; (G) Authorizing and Approving the Assumption and Assignment of

---

[1] The last four digits of the tax identification number for each of the Debtors follow in parenthesis: (i) Scovill Fasteners, Inc. (9561); (ii) Scovill, Inc. (3634); (iii) PCI Group, Inc. (7672) and Rau Fastener Company, L.L.C. (0883). Scomex, Inc. does not have a taxpayer identification number. The mailing address of the Debtors is 1802 Scovill Drive, Clarkesville, GA 30523-6348.

[2] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

Contract and Leases and Related Cure Amounts; (H) Authorizing the Sale of Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; and (I) Authorizing Debtors to Consummate All Such Transactions.  The relief requested in items (A) through (E) is collectively referred to herein as the "**Initial Relief**".

PLEASE TAKE FURTHER NOTICE that in the Motion the Debtors seek, among other things, an order of the Bankruptcy Court authorizing Debtors to sell substantially all of their assets either to Global SFI Holdings, LLC (the "**Buyer**"), pursuant to that certain Asset Purchase Agreement (the "**APA**") or to the successful bidder for the Debtors' assets at an auction (if any) (the "**Auction**"), **including the assumption and assignment of various executory contracts and unexpired leases** (the "**Designated Contracts**").

PLEASE TAKE FURTHER NOTICE that on May 13, 2011 the Court entered an order (the "**Bidding Procedures Order**") approving the Initial Relief, including the Debtors' proposed procedures for the assumption and assignment of Designated Contracts and notice of cure amounts.

PLEASE TAKE FURTHER NOTICE that a hearing to consider the remaining relief requested in the Motion and the results of the Auction (the "**Sale Hearing**") will be held before the Honorable Robert E. Brizendine, United States Bankruptcy Court Judge, at the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Courtroom 1202, 75 Spring Street, Atlanta, Georgia 30303, on **June 10, 2011** at **9:00 a.m.** (the "**Sale Hearing Date**").

PLEASE TAKE FURTHER NOTICE that the amount shown on Exhibit A attached to this Notice as the "Cure Amount" for the Designated Contract listed on Exhibit A is the amount, based upon the Debtors' books and records, which the Debtors assert is owed to cure any defaults existing under the Designated Contract as of May 18, 2011**.**

2

**PLEASE TAKE FURTHER NOTICE that if you disagree with the Cure Amount shown for the Designated Contract on <u>Exhibit A</u>, you must file a written objection in this case with the United States Bankruptcy Court for the Northern District of Georgia, on or before 4:00 p.m. (Eastern Time) on June 7, 2011, <u>provided</u>, <u>however</u>, that if the Buyer is not the successful bidder at the Auction, you may raise an objection at the Sale Hearing to the assumption and assignment of the Designated Contract solely with respect to the successful bidder's ability to provide adequate assurances of future performance under your Designated Contract.  In addition, you must set forth (i) the basis for the objection with specificity, (ii) the amount you assert as the Cure Amount, and (iii) attach appropriate documentation in support of the asserted Cure Amount.**

PLEASE TAKE FURTHER NOTICE that if you have any other objection to the Debtors' assumption and assignment of the Designated Contract to which you are a party or to any of the other relief requested, you also must file that objection in the manner and by the date and time stated above.

PLEASE TAKE FURTHER NOTICE that any objection filed in connection with the Cure Notice must be served so as to be received by that same date and time as set forth above upon the parties below: (a) counsel to the Debtors, Alston & Bird LLP, One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424, Attention: W. Hunter Holliday, Esq. and John C. Weitnauer, Esq.; (b) counsel to the lender, King & Spalding, 1180 Peachtree Street, Atlanta, GA 30309, Attention: Sarah R. Borders, Esq. and Sarah L. Taub, Esq.; (c) counsel for the Buyer, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd, Suite 1100, Los Angeles, CA 90067, Attention: Robert M. Saunders, Esq. and David Barton, Esq. and Burr & Forman LLP, 171 17th Street, NW, Atlanta, GA 30363, Attention: Erich N. Durlacher, Esq., and

3

(d) counsel to the Official Committee of Unsecured Creditors, Greenberg Traurig LLP, 3290 Northside Parkway, Suite 400, Atlanta, GA 30327, Attention: David B. Kurzweil, Esq. and John D. Elrod, Esq..

**PLEASE TAKE FURTHER NOTICE THAT ANY NON-DEBTOR PARTY TO ANY DESIGNATED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE AMOUNT FOR SUCH DESIGNATED CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.**

PLEASE TAKE FURTHER NOTICE that a copy of the Motion, with the attached APA and other exhibits, and/or the Sale and Bidding Procedures Order may be obtained by making an electronic or telephonic request upon the Debtors' counsel, Kit Weitnauer (kit.weitnauer@alston.com) or Heather Byrd Asher (heather.asher@alston.com) at 404-881-7000 or by accessing the Debtors' website at www.bmcgroup.com/scovillfasteners.

Dated: May 18, 2011

ALSTON & BIRD LLP

/s/ John C. Weitnauer
John C. Weitnauer (GA. Bar No. 746550)
      kit.weitnauer@alston.com
Heather Byrd Asher (GA. Bar No. 139022)
      heather.asher@alston.com
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
*Proposed Attorneys for Debtors*